UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAFAEL A. TORRES-MARTÍN,<br><br>    Claimant,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Respondent. | Civil No. 08-1287 (JAF) |

**OPINION AND ORDER**

Claimant Rafael A. Torres-Martín petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent Commissioner of Social Security ("Commissioner") denying disability benefits to Claimant. Docket Nos. 1, 9. Commissioner opposes the petition. Docket Nos. 5, 7.

**I.**

**Factual and Procedural History**

We derive the following facts from the parties' filings, Docket Nos. 1, 5, 7, 9, and the record in this case, Docket No. 4. Claimant, a high-school graduate, previously worked as a porter, an assistant for a refrigeration company, and an electrician's assistant until he suffered a job-related injury. Claimant applied for Disability Insurance Benefits ("DIB") on February 13, 2003, alleging an inability to work since October 29, 2001. Docket No. 4 at 100. Claimant averred disability due to a herniated disc in the lumbosacral spine at level L5-S1 with bilateral radiculopathy and

mental depression. Id. Claimant alleged that he could not "stand, sit or walk for too long" as his legs would become numb, suffered from "cramps and pain," had no sensation or movement in his right leg, and needed crutches to walk. Id. Claimant further asserted that he experienced constant, sharp back pain, suffered lapses in memory, and saw shadows. Id. Commissioner denied the application initially and on reconsideration. Id. at 45.

In the course of his application and appeal for DIB, Claimant underwent numerous physical and psychological examinations. Id. at 249-500. We describe only those relevant to this decision:

Claimant received physical therapy from the State Insurance Fund after his injury until March 14, 2002. Id. at 305-483. On January 10, 2002, Drs. Abreu and T. Alick, Jr., examined Claimant and recommended that he receive a foot brace. Id. at 414. Rosa Flores-Luciano, a physical therapist, noted on January 28, 2002, that Claimant was able to assume an upright position with weight on the lower left extremity, but not the right extremity because of acute pain. Id. at 402. However, Claimant was unable to stand unaided. Id. On February 13, 2002, Flores-Luciano noted that Claimant reportedly experienced constant lower back pain which became sharp pain when he attempted to move his right leg. Id. at 384. On March 14, 2002, an attending nurse practitioner reported that Claimant continued to experience pain and stated that his medication did not work as well

1   as expected. Id. at 366. The practitioner prescribed further
2   medication to treat Claimant's pain. Id.

3   　　　On May 9, 2002, Dr. Alberto Rodríguez-Robles conducted a
4   psychiatric evaluation of Claimant, finding his appearance to be
5   "well developed and nourished, dress[ed] casually and combed." Id. at
6   353. The report found in Claimant an "adequate and appropriate"
7   affect, depressive mood, "adequate, logical and relevant" thoughts,
8   average intellectual capacity, perception that was free of
9   disturbances, adequate attention and concentration, adequate past and
10  recent memory, good introspection, orientation in all three spheres
11  (person, place, and time), and adequate judgment. Id. Dr. Rodríguez-
12  Robles recommended further treatment and medication.  Id.

13  　　　On September 16, 2003, Dr. Jeanette Maldonado examined Claimant
14  and assessed his mental residual functional capacity. Id. at 262-80.
15  She found that Claimant was capable of understanding, remembering,
16  and complying with simple orders necessary for a regular workday;
17  able to respond to supervision; capable of making work-related
18  decisions; and able to relate to peers in an acceptable manner. Id.
19  at 279. The same day, Dr. Acisclo M. Marxuach examined Claimant,
20  assessed his physical residual functional capacity, and found him
21  capable of lifting ten pounds frequently and twenty pounds
22  occasionally, standing for two to three hours in an eight-hour
23  workday, and sitting for six hours in an eight-hour workday. Id. at

Civil No. 08-1287 (JAF)                                                      -4-

281-89. Dr. Marxuach found that Claimant had limited ability to exert force with his lower extremities. Id.

On March 11, 2004, Dr. Alfredo Pérez-Canabal conducted a neurological examination of Claimant. Id. at 290-97. The report contained diagrams of tests performed of Claimant's motor controls. Id. Dr. Pérez-Canabal concluded that Claimant exhibited right-leg monoparesis, chronic low back pain, EMG/NCX of low extremities, and thoracic/LS MRI. Id. at 291. He found that Claimant demonstrated no motor atrophy, possessed the ability to handle and carry things, had a limping gait, and experienced decreased sensation in the right leg. Id. Dr. Ángel Colón-Loyola, a roentgenologist, examined x-rays of Claimant's lumbar spine the same day. Id. at 297. He reported "no bone abnormality," "sacralization of L5 (vertebra)," and "[a] posterior fusion defect . . . at L5," but overall an "[e]ssentially normal examination." Id.

On March 24, 2004, Dr. Armando I. Caro conducted further psychiatric evaluation of Claimant. Id. at 298-302. The report indicated that Claimant exhibited "fluent, coherent, and logical" speech; "[n]o flight of ideas or looseness of associations"; depressed mood; irritable affect; no suicidal or homicidal ideations; no auditory or visual hallucinations; orientation in time, place, and person; fair concentration; preserved immediate memory; preserved short-term memory; preserved recent memory; preserved remote memory; preserved abstract thinking; and fair insight and judgment. Id. at

299. Dr. Caro diagnosed Claimant with severe major depressive disorder, pain disorder associated with a general medical condition, and a GAF score of 50-55. Id. Dr. Caro further commented that Claimant was able to handle his own funds, but his capacity for social interaction was impaired, and his prognosis was poor due to his physical condition. Id.

Claimant also received treatment from the Administration for Mental Health Services. Id. at 483-91. On December 30, 2004, Dr. M. Ricardo, the attending physician, observed that Claimant had been undergoing treatment since 2002 for depression and that he continued to exhibit symptoms of depression and anxiety. Id. at 487. Claimant stated that he had experienced visual and auditory hallucinations, but denied having suicidal or homicidal ideas. Id. at 491. Dr. Ricardo prescribed medication for Claimant and diagnosed Claimant with severe and recurrent major depression with psychotic traits. Id. at 487, 491. On January 27, 2005, Dr. Ricardo reported that Claimant stated that he had attempted suicide a month earlier but had failed, but that Claimant did not exhibit suicidal or homicidal ideas at the time. Id. at 485. Dr. Ricardo observed that Claimant appeared depressed, but was alert and oriented in the three spheres, and referred Claimant to a social worker and mental health professionals. Id. The record indicates one further psychiatric visit on December 27, 2005. Id. at 487.

Civil No. 08-1287 (JAF)                                                    -6-

On June 17, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 39. On May 30, 2006, Claimant amended his application to claim a period of disability from October 29, 2001, to January 27, 2005. Id. at 16. The hearing took place on August 8, 2006; Claimant did not attend, but he was represented by counsel. Id. at 501-08. On September 26, 2006, the ALJ found that Claimant was not disabled during the relevant period because he remained able to perform light work existing in significant numbers in the national economy. Id. at 28. Claimant subsequently sought review of the ALJ's decision by the Appeals Council, which declined review on January 18, 2008. Id. at 4.

On March 10, 2008, Claimant filed the present petition seeking review of the ALJ's decision. Docket No. 1. Commissioner filed a memorandum of law on July 14, 2008, Docket No. 7; Claimant filed a memorandum of law on August 25, 2008, Docket No. 9.

**II.**

**Analysis**

Claimant contends there was not substantial evidence for the ALJ to conclude that he was not disabled. Docket No. 9. An individual is disabled under the Social Security Act ("the Act") if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

Civil No. 08-1287 (JAF)                                                -7-

The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted) (quoting Rodríquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] - rather than the courts - to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he "ignor[ed] evidence, misappl[ied] the law, or judg[ed] matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

We address in turn Claimant's arguments that the ALJ (1) relied on conclusory assessments by non-examining consultants, (2) ignored psychological examinations in 2004 and 2005, and (3) failed to

consider Claimant's mental depression and pain which required the ALJ to look beyond published guidelines. See Docket No. 9.

### A.   Medical Reports by State Agency

Claimant argues that the ALJ's decision could not have been based on substantial evidence because the ALJ relied on conclusory opinions by non-examining consultants. Docket No. 9. Claimant challenges the sufficiency of the mental residual capacity assessment of Dr. Maldonado on September 16, 2003, and the physical residual functional capacity assessment of Dr. Marxuach, conducted the same day. Id. (citing Docket No. 4 at 262-89).

#### 1.   Examining Physicians

The ALJ may not rely on conclusory reports by non-examining doctors unless corroborated by a treating physician. Berrios-López v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991). Contrary to Claimant's assertion, Drs. Maldonado and Marxuach examined Claimant. See Docket No. 4 at 262-89. Furthermore, the ALJ cited reports by Drs. Pérez-Canabal, Rodríguez-Robles, and Abreu, id. at 28-29, all of whom examined Claimant, id. at 290-97, 348-55, 414. Thus, the ALJ did not rely on reports by non-examining experts.

#### 2.   Conclusory Opinions

As a corollary, the ALJ may rely on opinions by examining doctors if supported by medical findings. See Berrios-López, 951 F.2d at 431. The ALJ did not discuss the findings of Drs. Maldonado and Marxuach. See Docket No. 4 at 28-29. He cited instead the non-

conclusory opinions of other medical experts which tended to support the conclusions of Drs. Maldonado and Marxuach as to Claimant's physical and mental capacities. See id.

With respect to Claimant's capacity for physical exertion, his physical therapist from the State Insurance Fund observed on January 28, 2002, that while Claimant was unable to stand on his own, he could assume an upright position without placing weight on his right leg. Id. at 402. Furthermore, Dr. Pérez-Canabal examined Claimant's motor functions on March 11, 2004, noting his findings with detailed diagrams. Id. at 290-97. Dr. Pérez-Canabal found that Claimant showed no signs of motor atrophy, could pinch, handle, and carry things with his hands, and generally had adequate motor and sensory functions. Id. at 291. These medical records substantially support Dr. Marxuach's findings that Claimant was capable of sitting for long periods of time and lifting or carrying ten pounds frequently, but incapable of exerting force with his lower right leg. See id. at 283.

As to Claimant's mental condition, the ALJ cited the psychiatric evaluation by Dr. Rodríguez-Robles dated May 9, 2002. Id. at 28. Dr. Rodríguez-Robles examined Claimant and concluded that Claimant's perception, concentration, memory, introspection, and judgment were adequate, and that he was oriented in all three spheres. Id. at 353.

Dr. Caro's examination of March 24, 2004, which included detailed observations of Claimant, reinforces Dr. Rodríguez-Robles'

findings. See id. at 299, 353. While both diagnosed Claimant with depression, they also reported that he had no perceptual defects and was capable of logical reasoning, id., which support Dr. Maldonado's findings, see id. at 262-80. Therefore, even if the assessments by Drs. Maldonado and Marxuach were conclusory, there is ample, non-conclusory support from other doctors to establish Claimant's physical and mental condition. See Berrios-López, 951 F.2d at 431 (citing opinions of various physicians to bolster conclusory report of examining doctor).

**B.   Psychological Examinations Since December 2004**

Claimant contends that the ALJ ignored the final psychological examinations dated December 30, 2004, January 27, 2005, and December 27, 2005. Docket No. 9. This argument is baseless. The ALJ specifically considered these reports, see Docket No. 4 at 28 (citing Exhibit 10F), and the record from December 2005 is irrelevant to Claimant's application for DIB as it is outside the alleged period of disability, which ended January 27, 2005.

**C.   Nonexertional Impairments**

Claimant argues that the ALJ ignored evidence of Claimant's nonexertional impairments, namely mental depression and back pain, which required the ALJ to consult a vocational expert in addition to reliance on the Medical-Vocational Guidelines ("the Grid"), 20 C.F.R. pt. 404, subpt. P, app. 2. Docket No. 9. Commissioner contends that the ALJ correctly found Claimant's nonexertional limitations to be

Civil No. 08-1287 (JAF)                                            -11-

insufficiently severe, and properly discredited Claimant's assertions of mental limitations; thus, the ALJ was entitled to consult the Grid alone. Docket No. 7. As the parties agree that Claimant cannot resume his previous work as a lifter of heavy equipment, Docket Nos. 7, 9, the issue is whether Claimant's nonexertional limitations are sufficiently severe to preclude exclusive reliance on the Grid.

To establish a disability, the claimant must prove that his impairment prevents him from returning to prior work. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). If he meets this burden, Commissioner must then "show that there are other jobs in the economy that claimant can nonetheless perform." Id. Ordinarily, Commissioner may satisfy his burden by referring to the Grid. Id. However, if a claimant exhibits significant limitations beyond the requirement of physical strength ("nonexertional impairments") which affect his ability to work ("residual functional capacity"), the ALJ may need the supporting testimony of a vocational expert. Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991). Nevertheless, the ALJ may still rely on the Grid exclusively if the nonexertional impairment does not severely reduce the claimant's residual functional capacity. Id.; Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 527-28 (1st Cir. 1989). Absent substantial evidence to the contrary, the ALJ retains discretion to determine the severity of nonexertional impairments. See id.

In reviewing whether a claimant's nonexertional impairments severely reduce his residual functional capacity, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" by reference to all available evidence. 20 C.F.R. § 404.1545(a)(4); see id. § 404.1569a. In addition, pain can constitute a severe impairment that limits a claimant's residual functional capacity. Id. § 404.1545(e). However, evidence of effective treatment allows an ALJ to find that a claimant retains sufficient residual functional capacity for sedentary work. Burgos-López v. Sec'y of Health & Human Servs., 747 F.2d 37, 40 (1st Cir. 1984); see 20 C.F.R. § 404.1529(c). Furthermore, the ALJ may weigh the credibility of a claimant's assertions on his impairments by noting all inconsistencies in the record between the claimant's assertions and medical findings. See Evangelista, 826 F.2d at 141; Soc. Sec. Rul. 96-7p.

1. **Mental Depression**

As the ALJ specifically found that Claimant suffered from severe depression, Docket No. 4, the question is not the existence of depression vel non, but rather its effect on Claimant's residual functional capacity. During Claimant's psychiatric treatment on January 27, 2005, Dr. Ricardo found that Claimant was alert and oriented in all three spheres. Id. at 485. Although Claimant stated that he had previously attempted suicide, Dr. Ricardo found that he had "no suicidal or homicidal ideas" despite his depression. Id.

Moreover, a prior examination on December 30, 2004, revealed no suicidal or homicidal ideas. Id. at 491. The ALJ cited these records in finding that Claimant's emotional condition was not sufficiently severe so as to preclude all light work. Id. at 28.

Furthermore, the record includes a prior examination by Dr. Caro dated March 24, 2004, which reported that Claimant "was oriented in time, place and person"; had fair concentration; retained immediate, short-term, recent, and remote memory; was capable of abstract thinking; and possessed fair judgment and insight. Id. at 299. Dr. Caro reported that Claimant denied suicidal ideations and auditory or visual hallucinations, despite diagnosing Claimant with severe depression and impaired capacity for social interaction. Id.

Lastly, on September 16, 2003, Dr. Maldonado assessed Claimant's mental residual functional capacity. Id. at 277. She found Claimant capable of understanding, remembering, and complying with simple orders necessary for a normal workday. Id. at 279. She also found that Claimant responded to supervision, could make work-related decisions, and related to peers in an acceptable manner. Id. We find that there is substantial evidence to support the ALJ's conclusion that Claimant's mental depression did not severely limit his ability to engage in light work.

### 2. **Back Pain**

With respect to Claimant's assertions of debilitating back pain, id. at 100, the ALJ determined that the evidence demonstrated that Claimant's back pain did not severely limit his ability to work, id. at 29. The ALJ referred to the examination by Dr. Pérez-Canabal on March 11, 2004, who found that Claimant suffered no sensory or motor deficit despite his chronic pain. Id. The record is ambiguous as to the effectiveness of the therapy for pain, as Claimant reported that he continued to experience sharp pain. Id. at 306. However, the record also demonstrates that Claimant could lift light weight frequently, assume an upright position for significant periods of time, and sit for extended lengths of time. Id. at 281-89.

Furthermore, the ALJ determined that Claimant's assertions of totally disabling symptoms were non-credible in the light of medical evidence in the record. Id. at 29. As the ALJ noted, aside from Claimant's own assertions, there is not substantial medical evidence otherwise to establish Claimant's inability to perform basic tasks due to acute pain. Docket No. 4 at 29. The ALJ also noted that Claimant had made other statements which contradicted the medical record. Id. For instance, Dr. Caro reported on March 24, 2004, that Claimant experienced no hallucinations and possessed adequate memory, id. at 298-302, which appears to contradict Claimant's prior assertions of memory loss and visual hallucinations in his application for DIB, see id. at 100. The ALJ was entitled to resolve

Civil No. 08-1287 (JAF)                                                    -15-

the conflict between medical experts and Claimant's earlier statements against Claimant's credibility. <u>Evangelista</u>, 826 F.2d at 141; Soc. Sec. Rul. 96-7p. In short, there was sufficient basis for the ALJ to discredit Claimant's allegations of crippling pain, and to find that Claimant's back pain did not severely restrict his ability to perform light work.

Therefore, there is substantial evidence in the record to support the ALJ's determination that Claimant's mental depression and pain did not severely reduce his residual functional capacity. Consequently, the ALJ appropriately consulted the Grid without the aid of vocational experts. <u>See</u> <u>Ortíz</u>, 890 F.2d at 527 (affirming exclusive reliance on Grid as nonexertional limitations did not significantly reduce claimant's capacity for light work). We, thus, find that the ALJ's disability determination was based on substantial evidence and hence conclusive. <u>See</u> 42 U.S.C. § 405(g).

### III.

### Conclusion

Accordingly, we hereby **AFFIRM** Commissioner's determination and **DENY** Claimant's petition, <u>Docket No. 1</u>.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 28th day of May, 2009.

                  s/José Antonio Fusté
                  JOSE ANTONIO FUSTE
                  Chief U.S. District Judge